## J. A. MONEGHAN v. T. E. CANNON.

Municipal Corporations — Power to Levy Privilege Tax — Limitation — Code of 1880, Section 587.

    The grant of a general power, in the charter of a municipal corpora-tion, to tax all occupations and callings in it, confers the right to tax the occupation of selling spirituous liquors, but this right is restricted by section 587 of the Code of 1880, to 50 per centum of the State license, and this is not modified by section 1102 of that Code.[1]

The charter of the town of Verona, a municipal corporation, conferred on the mayor and councilmen the power to "fix the license on all merchants, trades, professions, and callings in said town."

---

1

"The privileges taxed, as above provided, shall not be taxed by the board of supervisors of any county, nor shall they be subject to taxation by any city or town to an amount exceeding 50 per centum of the tax above specified, unless expressly provided for by law." Code of 1880, § 587.

Municipalities operating under the chapter may, under the section, impose a license tax only upon such callings, trades, professions and occupations as are taxed by the State. Greenwood v. Delta Bank, 75 Miss. 162; 21 So. 747.

Municipalities are not empowered by section 2935 of the chapter to impose a greater privilege tax on meat markets than 50 per centum of the State license tax on the same. Harris v. Water Valley, 78 Miss. 659; 29 So. 401.

Where a city levied under the section a privilege tax on commercial agencies while the law (Code 1892, § 3506), imposing a State privilege tax on them, was in force, it cannot collect such tax by suit after the repeal of the law. Bradstreet v. Jackson, 81 Miss. 233; 32 So. 999.

"To levy and collect a license tax upon and regulate all callings, trades, professions and occupations conducted, pursued, carried on, or operated within the limits of the city or town, the same not to exceed 50 per centum of the State license tax levied upon the same calling, trades and professions. Code 1906, § 3367.

Appellant, Moneghan, obtained a license from the State to sell vinous and spirituous liquors by the pint in the town of Verona. He paid the privilege tax fixed by law to the State, which was $100. Appellee, Cannon, as the officer of said town, distrained certain personal property of Moneghan's to enforce the payment of $100 privilege tax levied by the mayor and councilmen of the town on appellant's business, and held it in his possession. Appellant sued out a writ of replevin for it.

A jury was waived and the cause was submitted to the court, and a judgment was rendered for the defendant in replevin that he recover the property replevied and $20 damages. From that judgment plaintiff appeals.

APPEALED from Circuit Court, Lee county, J. A. BUCHANAN, Judge.

Reversed and remanded for new trial, February 12, 1883.

*Attorney for appellant, W. L. Clayton.*

*Attorneys for appellee, Blair & Clifton.*

Brief of W. L. Clayton:

The question is, did the corporation have the power to levy the tax? In the first place, the power of taxation exists in municipal corportions only when and to the extent to which it is clearly conferred by the charter. See Jackson *v.* Newman, 59 Miss. 385.

The appellee contends that the sixth section of the charter of Verona gives the authority to levy the tax, and the Code of 1880, section 1102, restrains them to the $100. They offer only the sixth section of the charter of Verona, and, of course, it is the only part of the charter having reference to the taxing power. There is but one sentence in that section which looks even remotely to the authority contended for, and that is found on page 11 of the transcript, and is as follows: "To fix the license on all merchants, traders, professions, occupations, and callings in said town, but the parties so licensed shall be liable to all State tax and to county license and taxes." There is no grant of authority to tax any privilege granted to any class of persons by the State, and for which they have paid. There is a clear difference between

the power to tax and the power to license. A power to license and regulate draymen, etc., does not give authority to tax the occupation itself. Dillon on Corp., § 292.

But the grant of power in the Verona charter to license merchants could not, under the law as it stood when the privilege to sell liquor by the pint was granted to the appellant, have granted a license to him to sell liquor by the pint. Certainly, then, if this grant of power in the charter did not confer the right to license a merchant to sell liquor by the pint, it does not give authority to tax the privilege when granted by the State. This clause in the charter could not confer the authority to license the selling of liquor at all by the pint or by the drink, because, at the time the Verona charter was passed by the Legislature, in 1873, there was, and has always been, a general law regulating the sale of liquor, so that whatever merchants the corporate authorities of Verona might license, they could not license liquor merchants. It was not intended, as everybody must know, to confer power on the town of Verona to license any one to sell whiskey. That was then, and has always been, regulated by the general laws of the State. We reach the conclusion, then, legitimately, that the word "merchant" used in the charter did not refer to liquor merchants. But, if it did, it was certainly repealed by the general law providing for the granting of privilege license to sell liquor by the pint.

Again, the corporation, if it had power to levy any tax at all on said privilege, could have levied but $50. The license privilege to sell liquor by the pint is $100. Code 1880, § 585, p. 189. And if the corporation had authority to tax the privilege at all, it could only levy $50. See Code 1880, § 587.

But counsel say section 1102 grants the authority to go to 100 per cent if the charter gives them the right at all. Not at all. This section has reference to retailing liquors, and is a restriction on the authority named therein, while section 587 is a restriction on the amount of the tax which may be levied on the privilege named in section 585.

Again, the judgment is absolute for a return of the whiskey seized under the replevin writ, and, in default thereof, for $150 and $20 damages besides, and costs. It could only be for the $100 and the damages. This, of course, can be corrected by a proper *remittitur*.

Again, we raise the point that counsel fees are no part of the damages. It will be seen by the agreement, it is admitted, that an attorney's fee of $20 shall be included as damages, if such fees are allowable in such actions; I am not aware of our courts having decided this question. As we have it presented here, we wish it decided, so the practice of our Circuit Courts may be uniform. Morris, in his work on replevin, gives us no light. Sedgwick, on the measure of damages, leaves it an open question, but seems to incline to the opinion that counsel fees are not to be included as damages, except in cases where punitive damages may be given. After discussing the question for several pages, he winds up by saying: "The question, however, still remains whether counsel fees can be allowed in cases technically of tort, but where no actual fraud or malice is alleged." See Sedgwick on Damages, side p. 98.

Our own court, in N. O., J. & G. N. R. R. *v.* Allbreton, 38 Miss. 242, say that damages in the way of counsel fees are allowable in cases proper for the allowance of exemplary damages. I insist that damages in the way of counsel fees can only be allowed in such cases, and that in the ordinary case of replevin, as this is, where each party honestly believes he is entitled to the property, no counsel fees can be allowed.

Brief of Blair & Clifton:

The sole question to be decided here is the authority of appellee, under the charter of the town and the general law, to levy a tax of $100 on the license privilege of selling liquor by the pint within the corporate limits of said town. About all the general law has to do with it since the decision in *ex parte* Ferguson, 59 Miss. 13, is to limit the power to $50, *subject to the limitation prescribed in section 1102 to $100.*

The power, then, must come from the town charter.    *    *    *  We invite the attention of the court to the broad terms of the general grant of power to pass all ordinances for the good government of the town, not inconsistent with the law of the land and the Constitutions of the State and of the United States.

We think that if here, then, is a mere power to license, that the intention was to give the power to tax; because, first, it certainly is not a police power; second, the object must have been to raise revenue; third, why do the unprecedented and uncalled-for thing

of requiring license for honorable, necessary, and useful pursuits, etc., if not for revenue? If a man sells sugar and coffee, or practices medicine or law, why require a license unless for revenue? Here is a source of no disorder, no immorality, no detriment, and these callings need no policing, or restraining, or licensing, except only for revenue.

But it is not the grant of the mere power to license, as I will now briefly attempt to show from the language used.

To *fix* the license on all merchants, etc., and, first, there is no power of refusal or prohibition in this grant. If "A" applies for the license to merchandise, it must be granted. If no police power is to be exercised, if no refusal is allowed, what object can there be in view except revenue? If the object, then, is not for revenue, it is an empty mockery. The town says: "We do not want to restrain or prohibit or tax; we haven't the slightest objection to your merchandising. In fact, such useful things should be encouraged. But we just want you to go through the form of going to the mayor's office, applying for your license, and getting it, to teach you respect and submission to the city authorities, and to show you how good and kind they are." The fact that the power of refusal is not given conclusively shows that the power is given to license for revenue, and not as a police matter.

"To fix the license on." Evidently the business is already going on, and it is not proposed to stop it. What then? *Only to tax it.* We will admit that the language used is not the happiest in the world. The charter was likely not drawn by a lawyer. It is the intention which the court is after. We have no doubt the meaning of this language is to fix the tax, license being used in that sense. If the "mere power" to license was intended, there could have been no difficulty or confusion.

Beyond all dispute, the language demonstrates that the idea of licensing is not alone in the mind of the Legislature. Taxation was also. On any other hypothesis, the word "fix" is useless and "on" unprecedented.

Our conclusion gives effect to every word. But, again, it is said "both parties so licensed shall be liable to all State tax, and county tax, licenses and taxes, provided the Legislature sees proper to impose them." Now, if to fix the license on merchants, etc., only meant to license, this provision is certainly silly. But if it meant the power to tax, then, at least, it contains a natural

suggestion.   In other words, if no power to tax was given the town, why reserve the right to the county and State?   If not delegated, of course, it was retained.   But, if delegated to the town, then, it might be contended, it no longer existed in the State and county, and hence the provision of caution that, notwithstanding the power to tax is given the town, it is also reserved to the State and county for State and county purposes.   "The principle of strict construction should not be pressed to such an extent as to defeat the legislative purposes fairly appearing upon the entire enactment."   1 Dillon, p. 176, note.

OPINION.—CAMPBELL, C. J.:

It is manifest that the legislative intent was to confer power on the town of Verona to tax all occupations and callings in it, and that, under this grant of power, it was the right of the town to tax the occupation of selling vinous and spirituous liquors by the pint; but the extent of the right to tax the privilege to sell liquor by the pint was not to exceed 50 per cent of the State tax; that is, the town could not tax the vocation of selling under a State license to sell liquor by the pint more than $50, the price of the State license being $100.

This instruction is contained in section 587 of the Code of 1880, and is not modified by section 1102, which applies to retailing as regulated by the chapter of which it is a part.

An attorney's fee was improperly allowed.

*Judgment reversed* and cause remanded for a new trial.